RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0457p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID LAWRENCE, et al.,

    *Plaintiffs-Appellants,*

v.

J. KENNETH BALCKWELL, Secretary, State of Ohio, et al.,

    *Defendants-Appellees.*

Nos. 04-4022/4150

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00398—Susan J. Dlott, District Judge.

Argued: September 23, 2005

Decided and Filed: November 29, 2005

Before: COLE, ROGERS, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Robert B. Newman, NEWMAN & MEEKS CO., LPA, Cincinnati, Ohio, for Appellants. David Todd Stevenson, HAMILTON COUNTY PROSECUTING OFFICE, Cincinnati, Ohio, Damian W. Sikora, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Robert B. Newman, Stephen R. Felson, Lisa T. Meeks, NEWMAN & MEEKS CO., LPA, Cincinnati, Ohio, for Appellants. David Todd Stevenson, W. Pete Heile, HAMILTON COUNTY PROSECUTING OFFICE, Cincinnati, Ohio, Damian W. Sikora, Richard N. Coglianese, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

## OPINION

DAVID W. McKEAGUE, Circuit Judge. Plaintiffs challenge an Ohio election statute which requires independent congressional candidates to file a statement of candidacy and nominating petition with a minimum number of signatures by the day before the primary election. The district court denied injunctive relief and granted Defendants' motions to dismiss. Plaintiffs argue on appeal that the district court erred because Ohio's early filing deadline violates their First and Fourteenth Amendment rights. For the reasons set forth below, we affirm the judgment of the district court.

1

# I. BACKGROUND

Ohio law requires an individual interested in becoming an independent congressional candidate in the general election to file both a statement of candidacy and a nominating petition by 4:00 p.m. on the day before the primary election immediately preceding the general election at which the candidacy is to be voted on by the voters. Ohio Rev. Code § 3513.257. In years in which there is no presidential election, primaries are held on the Tuesday of the first full week of May. However, in presidential election years, primaries are held on the Tuesday of the first full week of March. *Id.* § 3501.01. A nominating petition must contain a number of signatures equal to at least one percent of the electors in the individual's congressional district. *Id.* § 3213.257(C). On March 1, 2004, the day before the 2004 primary, David Lawrence attempted to file a statement of candidacy for the First Congressional District of Ohio with the Hamilton County Board of Elections ("Board"). The Board declined to receive his statement because he failed to include the requisite nominating petition.

On June 4, 2004, Lawrence presented his nominating petition to the Board containing a sufficient number of signatures. However, the Board rejected the petition because it was untimely filed. On June 14, 2004, Lawrence and Yifat Shilo, a voter in the First Congressional District who wished to vote for Lawrence, filed a complaint in federal district court seeking an injunction requiring the Board to place Lawrence on the November ballot and permanently enjoining enforcement of Ohio's early filing deadline. The district court held a hearing and issued an order denying Plaintiffs' motion for a preliminary and a permanent injunction. A short time later the trial court summarily granted Defendants' motions to dismiss the complaint relying on the analysis in its order resolving the motion for injunctive relief. Plaintiffs timely appealed both the denial of injunctive relief and the granting of Defendants' motions to dismiss.

# II. ANALYSIS

## A. Mootness

Defendants assert that the court of appeals should affirm the district court's dismissal of the complaint because the controversy is now moot since the 2004 election has already taken place. When a case becomes moot pending appeal, "it is the duty of the appellate court to set aside the decree below." *U.S. Dep't of Treasury v. Galioto*, 477 U.S. 556, 560 (1986) (citing *Duke Power Co. v. Greenwood County*, 299 U.S. 259, 267 (1936)). This case is not moot because it falls within the exception to the mootness doctrine for cases which are capable of repetition yet evade review.

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979); *Chirco v. Gateway Oaks*, 384 F.3d 307, 309 (6th Cir. 2004). The mootness inquiry must be made at every stage of the litigation. *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 458 (6th Cir. 2004); *Gottfried v. Medical Planning Servs., Inc.*, 280 F.3d 684, 691 (6th Cir. 2002). However, a case will not be considered moot if the challenged activity is capable of repetition, yet evading review. *E.g., Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911); *Chirco*, 384 F.3d at 309. This exception applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). The party asserting that this exception applies bears the burden of establishing both prongs. *See Deja Vu of Nashville v. Metro. Govern. of Nashville and Davidson County*, 274 F.3d 377, 390-91 (6th Cir. 2001); *Speer v. City of Oregon*, 847 F.2d 310, 311 (6th Cir. 1988); *accord Public Utils. Comm'n v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001); *Video Tutorial Services, Inc. v. MCI Telecomm. Corp.*, 79 F.3d 3, 6 (2nd Cir. 1996); *OSHA Data/CIH Inc. v. U.S. Dept. of Labor*, 220 F.3d 153, 168 (3rd Cir. 2000); *Benavides v. Housing Authority of San Antonio*, 238 F.3d 667, 671 (5th Cir. 2001). *Contra Ackley v. Western Conf. of Teamsters*, 958 F.2d 1463, 1469 (9th Cir. 1992).

Neither party disputes that the occurrence of the 2004 election made it impossible for the courts to grant the preliminary injunctive relief Plaintiffs sought of placing Lawrence's name on the 2004 ballot. However, Plaintiffs contend that the court should still address their request to permanently enjoin the application of Ohio's early filing deadline because the injury they alleged is capable of repetition, yet evading review. Plaintiffs have easily met their burden of establishing the first prong. Challenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election. *See Morse v. Republican Party of Va.*, 517 U.S. 186, 235 (1996); *Norman v. Reed*, 502 U.S. 279, 287-88 (1992); *Speer*, 847 F.2d at 311. The instant challenge is no exception.

The issue of whether Plaintiffs have established the second prong of the capable of repetition yet evading review exception is more complex because there is no evidence in the record addressing whether Lawrence plans to run for office or Shilo plans to vote for an independent candidate in a future election. The Supreme Court has stated that the purpose of the second prong is to determine "whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 319 n.6 (1988) (emphasis in original). Although Lawrence has not specifically stated that he plans to run in a future election, he is certainly capable of doing so, and under the circumstances it is reasonable to expect that he will do so. Neither is an explicit statement from Shilo necessary in order to reasonably expect that in a future election she will wish to vote for an independent candidate who did not decide to run until after the early filing deadline passed. The law at issue is still valid and applicable to both Lawrence and any independent candidate Shilo might wish to vote for in future election years. Therefore, the controversy is capable of repetition.

Even if the court could not reasonably expect that the controversy would recur with respect to Lawrence or Shilo, the fact that the controversy almost invariably will recur with respect to some future potential candidate or voter in Ohio is sufficient to meet the second prong because it is somewhat relaxed in election cases. Courts have applied the capable of repetition yet evading review exception to hear challenges to election laws even when the nature of the law made it clear that the plaintiff would not suffer the same harm in the future. *See Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972); *Honig*, 484 U.S. at 335-36 (Scalia, J., dissenting) (observing that "some of our election law decisions differ from the body of our mootness jurisprudence . . . in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur between the defendant and the other members of the public." (internal citations omitted)). Since the harm Plaintiffs allege was the direct result of an extant Ohio statute, future independent congressional candidates will suffer the same harm Plaintiffs are alleging. Consequently, Plaintiffs have established that the harm they suffered is capable of repetition, yet evading review. The district court properly exercised jurisdiction.

**B.    Constitutionality of Ohio's Early Filing Deadline**

Plaintiffs appeal both the district court's denial of its motion for preliminary and permanent injunctions and the granting of Defendants' motions to dismiss. The core issue in both of these determinations is whether Ohio's early filing deadline is constitutional as a matter of law.[1] Therefore, this issue will be analyzed first separately, before assessing the ultimate propriety of each of the district court's orders.

In Ohio an independent candidate will not appear on the ballot unless he or she meets the requirements of the early filing deadline. *See* Ohio Rev. Code § 3513.257. The Supreme Court has observed that such election laws "place burdens on two different, although overlapping, kinds of rights–the

---

[1] Although neither the district court nor any of the parties have addressed whether Plaintiffs' claim is a facial challenge or an as-applied challenge, Plaintiffs' request that application of Ohio's early filing deadline be permanently enjoined demonstrates that it is asserting that the deadline is unconstitutional on its face.

right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). Though both of these freedoms "rank among our most precious freedoms," each state necessarily has extensive authority to regulate elections which tends to restrict those rights to some degree. *Id.*; *accord Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

There is no bright-line test to determine when a state oversteps its bounds and impermissibly infringes on the constitutional rights of voters. *Storer v. Brown*, 415 U.S. 724, 730 (1974); *Anderson*, 460 U.S. at 788. Courts must undertake the difficult task of considering and weighing the asserted injury to fundamental constitutional rights, the precise interest of the state in the regulation at issue, and the extent to which it is necessary to burden important rights in order to achieve any important state interests. *Anderson*, 460 U.S. at 788. When a state promulgates a regulation which imposes a "severe" burden on individuals' rights, that regulation will only be upheld if it is "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434; *Norman v. Reed*, 502 U.S. 279, 289 (1992). However, "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788. Therefore, the court must first examine whether the challenged Ohio statute imposes a severe burden or is a reasonable and nondiscriminatory restriction. Next the court must examine Ohio's asserted state interests and determine if they are sufficiently weighty to justify the restriction imposed.

Plaintiffs assert that Ohio's filing deadline for independent congressional candidates imposes a severe burden on their First and Fourteenth Amendment rights. The primary support they offer for this statement is a citation to expert testimony that early filing deadlines place significant burdens on independent candidates because independents often do not decide to run until after the deadline has passed. Though an earlier deadline does impose more of a burden than a later deadline, the Supreme Court has held that little weight is given to "the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status." *Storer*, 415 U.S. at 736.

Plaintiffs point out that in the *Anderson* case the Supreme Court found that an Ohio law requiring independent presidential candidates to file in March imposed a significant burden on independents and those inclined to vote for them. However, Plaintiffs gloss over a vital distinction. The early deadline discussed in *Anderson* imposed such a significant burden because it put independent candidates at a disadvantage vis-a-vis the major parties' nominees who were not named until nearly five months later. In this case, congressional candidates who seek a place on the ballot through the primary process must file a declaration of candidacy sixty days before the primary election. Ohio Rev. Code § 3513.05. Consequently, all candidates seeking a place on the ballot in November must engage in substantial campaign work before the early primary in order to obtain a space on the ballot. Those running in a primary must file sixty days before the primary, campaign, and win their party's primary while independent candidates must spend the time before the primary acquiring the requisite number of signatures and then file their petition by the day before the primary. All candidates are burdened by the fact that Ohio chooses to conduct its primary at an early date, but there is no particular group which feels the additional burden of being placed at a disadvantage with respect to the rest of the field. The district court correctly concluded that this difference between this case and the *Anderson* case is significant. Here the burden imposed by Ohio's early deadline is nondiscriminatory.

There is no reason for this Court to conclude that the burden Ohio has placed on all candidates to engage in significant campaign efforts prior to March in order to obtain a place on the ballot is severe or inherently unreasonable. The filing deadline for independent candidates is not so early that a diligent candidate cannot meet the requirement. Furthermore, the burden on independent candidates to file the day before the primary is reasonable because it prevents such candidates from being able to make a decision to

run for office after learning which candidates will be representing the major parties.[2] Although Plaintiffs urge that independents not only should, but must, have this advantage, there is nothing in the case law which suggests that a state is required to give independent candidates the advantage of jumping into a race in response to late-breaking events which impact the political landscape when major parties do not have the same flexibility. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986) (holding that states need not increase the likelihood that an unpopular candidate will gain access to the general election ballot).

One of the reasons the *Anderson* court found that the early filing deadline imposed a severe burden on independent presidential candidates was that they had to make a decision based on a history that ended in March while the major parties were able to take into account the development of events for another five months. *Anderson*, 460 U.S. at 790-91. Yet Plaintiffs argue *Anderson* mandates that they be given the same kind of advantage which the Supreme Court determined could not be given to major parties. Plaintiffs acknowledge that they are not seeking equal treatment and argue that independent candidates are at such a severe disadvantage in the electoral process that the Constitution requires Ohio to give them the very advantage which it prohibits Ohio from providing to major party candidates. However, *Anderson* does not support the notion that anything short of an affirmative action program for independent candidates creates a severe burden on First Amendment rights.

The only way for Ohio to move its filing deadline for independent candidates closer to November without creating the inequity of allowing independent candidates to jump into the race after the major party candidates have been determined would be to move the primary to a later date. The court would be overstepping its bounds to hold that either Ohio's decision to hold its primary at a relatively early date in presidential election years, or its decision to require all potential candidates to take action prior to that date in order to gain a place on the November ballot, are so unreasonable that strict scrutiny is necessary. When considering Ohio's election scheme as a whole, the early filing deadline is both reasonable and nondiscriminatory and, therefore, within Ohio's constitutional authority to regulate elections as long as it advances an important state regulatory interest.

The district court observed that the Supreme Court has acknowledged a state's strong interest in maintaining the stability of its political system and ensuring that candidates have a modicum of support before putting their name on the ballot. Although there are clearly limits, a wide range of methods of requiring potential candidates to show support have been upheld as legitimate means to achieve this important state interest. *See Munro*, 479 U.S. at 194-95; *American Party of Texas v. White*, 415 U.S. 767 (1974); *Jenness v. Fortson*, 403 U.S. 431 (1971). The Supreme Court has upheld laws requiring signatures from as much as five percent of the voting population from a relevant geographic area. *Jenness*, 403 U.S. at 438. Although Ohio requires independent candidates to submit their signature petitions earlier than most deadlines which have been upheld, the required number of signatures is only one percent of the relevant voting population. Ohio Rev. Code. § 3513.257(C). Since a state's interest in verifying a candidate has a modicum of support justifies a burden of requiring signatures of five percent of voters by July or August, it is logical to infer that the burden Ohio has imposed by requiring signatures of only one percent by an

---

[2] The cases Plaintiffs cite for the proposition that early filing deadlines impose a severe burden all deal with cases in which the deadline for independents (or minor parties) to file was substantially in advance of the primary election. *See Anderson*, 460 U.S. at 783 n.1 (deadline seventy-five days before primary); *New Alliance Party v. Hand*, 933 F.3d 1568, 1570 n.3 (11th Cir. 1991) (deadline sixty days before primary); *Cromer v. South Carolina*, 917 F.2d 819, 822 (4th Cir. 1990) (deadline seventy days before primary); *McClain v. Meier*, 637 F.2d 1159, 1164 (8th Cir. 1980) (deadline ninety days before primary); *Cripps v. Seneca County Bd. of Elections*, 629 F.Supp. 1335, 1338 (N.D. Ohio 1985) (deadline seventy-five days before primary); *Libertarian Party v. Ehrler*, 776 F.Supp. 1200, 1205 (E.D. Ky. 1991) (deadline 119 days before primary); *Stoddard v. Quinn*, 593 F.Supp. 300, 306 (D. Maine 1984) (April 1 deadline, primary held on second Tuesday in June); *Bradley v. Mandel*, 449 F.Supp. 983, 985 (D. Md. 1978) (deadline seventy days before primary); *Citizens to Establish a Reform Party in Arkansas v. Priest*, 970 F.Supp. 690, 700 (E.D. Ark. 1996) (deadline nearly five months before primary). The two circuits which have dealt with a deadline for independents the day before or day of a primary have found that the burden imposed was not severe. *Wood v. Meadows*, 207 F.3d 708 (4th Cir. 2000); *Council of Alt. Political Parties v. Hooks*, 179 F.3d 64 (3rd Cir. 1999).

earlier deadline is similarly justifiable. The signature requirement meets Ohio's important state interest in verifying a candidate's support, and the early deadline meets Ohio's important state interest of equal treatment of candidates and its administrative interest of being able to process independent candidates' petitions and verify signatures in the midst of completing a host of other tasks necessary to conduct a fair election. Therefore, Ohio has important state regulatory interests which are sufficient to justify the reasonable and nondiscriminatory burdens imposed by its early filing deadline.

Plaintiffs' arguments that there are no legitimate state interests which justify such an early deadline are unpersuasive. Plaintiffs argue that placing the filing deadline so many months before the November election is not necessary. Though there is case law to support this proposition, it comes from cases in which strict scrutiny was applied and the state was, therefore, obligated to demonstrate that there was no less restrictive means by which it could achieve its important interest. *See New Alliance Party*, 933 F.2d at 1576. Since strict scrutiny is not appropriate in this case, Plaintiffs' arguments and citations are inapposite. Plaintiff's citation of the *Anderson* case to support its argument is also inapplicable because that case involved a presidential election. The Supreme Court held that a state has less of an interest in regulating a national election than one which takes place solely within its borders such as the congressional election at issue here. *See Anderson*, 460 U.S. at 795.

All of Plaintiffs' arguments that Ohio's early filing deadline violates their First and Fourteenth Amendment rights fail. The filing deadline for independent congressional candidates set forth in Ohio Revised Code Section 3513.257 is constitutional as a matter of law. The district court properly denied injunctive relief and dismissed the suit. Accordingly, the judgment of the district court is **AFFIRMED**.